**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID W. MAGNUSON, | ) | |
| | ) | Case No. 19 C 6158 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| TRULITE GLASS & ALUMINUM | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter involves personal injuries alleged from a September 2017 rear-end collision in which a truck driven by an employee of Defendant Trulite Glass & Aluminum Solutions, LLC, ("Defendant" or "Trulite") struck a van driven by Plaintiff David W. Magnuson ("Plaintiff" or "Magnuson") from behind. The case is before the magistrate judge on consent (D.E. 11), and the parties began a seven-day jury trial on July 10, 2023. D.E. 204, 205, 208, 209, 213, 217, 221. Defendant admitted negligence in connection with the rear-end collision but denied that the extent of Plaintiff's injuries resulted from the collision. Final Jury Instructions As Given By the Court ("Jury Inst."; D.E. 218) at 23; Amended Joint Final Pretrial Order (D.E. 194) ¶ 2. On July 18, 2023, the jury returned a unanimous verdict (D.E. 223) in favor of Plaintiff and against Trulite, awarding Plaintiff $122,500.00 in total compensatory damages, comprised of: $25,000 for the loss of normal life experienced; $15,000 for the loss of a normal life reasonably certain to be experienced in the future; $40,000 for the pain and suffering experienced; $25,000 for the pain and suffering reasonably certain to be experienced in the future; $5,000 for the emotional distress experienced; and $12,500 for the value of earnings and profits lost, and the present cash value of earnings and profits reasonably certain to be lost in the future. D.E. 221, 244. Unhappy with the

jury's determination of the extent of recoverable damages, Plaintiff has moved for a new damages trial under Federal Rule of Civil Procedure 59(a). Because none of Plaintiff's arguments demonstrates that the verdict is against the manifest weight of the evidence or that he did not receive a fair trial, the Court denies Plaintiff's Rule 59(a) Motion For a New Trial (D.E. 232) in its entirety for the reasons set forth below.

## BACKGROUND

This matter arises from a rear-end vehicle collision that took place at the intersection of U.S. Route 14 and Foxmoor Road in the Village of Fox River Grove, Illinois, on September 18, 2017. Defendant Trulite Glass & Aluminum Solutions, LLC's *Amended* Answer to Plaintiff's Complaint ("Answer"; D.E. 211 at 2-5). On the morning of the collision, Plaintiff was driving to an appointment for his new construction business. Transcript of Trial Proceedings ("Tr."; D.E. 232-2) at 512.[1] Evidence was presented to show that Trulite's driver, Colin Donnell, was driving a box truck eastbound when he struck Plaintiff's van as it was stopped at a red light on Route 14. Tr. at 321, 324, 329, 333, 513-14. Donnell testified that there was no noticeable damage to his truck or to the glass contents of his truck. Tr. at 342, 344. The speed of the box truck at the time of the crash was not established at the trial, although Donnell testified that he had admitted in his trial testimony to having failed to reduce speed to avoid a collision. Tr. at 335.

Plaintiff was treated at the scene by paramedics with ice, declined transport to the hospital, and then drove to his meeting. Tr. at 517-18. Photographs of the two vehicles involved in the collision were admitted into evidence, with a sampling below. Tr. at 343, 428. Donnell testified that he took the picture of the impact zone of the front bumper of the Trulite truck (Defense Exhibit 1) and that there was no noticeable damage to it. Tr. at 342, 343, 345. Plaintiff testified that the

---

[1] The page numbers associated with "Tr." cites herein reference the actual transcript page number, not the docket entry page number.

collision at the rear of his red van (Plaintiff's Exhibit 7) left the doors punched in, the rear quarters

bent, and the hinges appearing to have been ripped off, with damage to the rear steel bumper.  Tr.

at 518.




Plaintiff testified that prior to the collision, in May 2017, he started a small construction

company after a period of semi-retirement from 2010-2017.  Tr. at 502-504.  At the time of the

collision, Plaintiff was on his way to meet with a potential client, he said.  Tr. at 503.  Two days

later, Plaintiff claimed, he was experiencing "bad pain" in his neck, and shoulder area and visited

an urgent care facility where he was seen by a nurse practitioner.  Tr. at 525.  A CT scan was

performed, he was prescribed medication, and he was referred to Dr. Fliman for follow-up care.

Tr. at 525-26.

Plaintiff testified that the vehicle collision caused him two physical injuries – a spinal cord

injury that led to a spinal fusion and a tear to the left shoulder labrum.  Tr. at 613.

Q:      Those are the only two injuries that you claim from this accident, right?

A:      Correct.

Tr. at 613.

Defendant denied that the extent of Plaintiff's injuries was the result of the collision. Tr. at 1492-96. Over the course of the trial, the jury heard extensive testimony about Plaintiff's injuries and his claims that the collision had caused them. This testimony came from Plaintiff, his sibling and his adult stepchild; Plaintiff's treating health care providers and expert witnesses along with Defendant's expert witness; and former clients of Plaintiff and others.

In closing arguments, Plaintiff asked the jury to return a verdict of $14.3-20.4 million, Tr. at 1489-90, and the defense suggested $25,000, Tr. at 1519. The jury returned a verdict in Plaintiff's favor and against Trulite for $122,500. D.E. 221, 223, 244.

## ANALYSIS

Rule 59 provides that a court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Seventh Circuit has explained that a "'new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party.'" *Bowers v. Dart*, 1 F.4th 513, 521 (7th Cir. 2021), quoting *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). In assessing a motion for a new trial, the trial judge must "perform its own assessment of the evidence presented," and do so "neutrally." *Lewis v. McLean*, 941 F.3d 886, 893 (7th Cir. 2019) (internal citations omitted). Trial courts have considerable discretion in ruling on Rule 59 motions. *Id.* at 891-93; *PECO Pallet, Inc. v. Northwest Pallet Supply Co.*, No. 15 cv 50182, 2019 WL 8324483, at *2 (N.D. Ill. Jan. 29, 2019) (citations omitted). These decisions are reviewable for abuse of such discretion, *Ewing v. 1645 W. Farragut, LLC,* 90 F.4th 876, 886 (7th Cir. 2024), meaning "whether any reasonable person could agree with the district court." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (citation omitted).

An evidentiary error warrants a new trial only if the error "affected any party's substantial rights." Fed. R. Civ. P. 61. An error in admitting or excluding evidence may warrant a new trial, but only when there is a "significant chance" that the error affected the jury's verdict. *Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2013). Therefore, a new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012). "Harmless errors do not require a new trial, instead '[a] new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice.'" *Chicago Import, Inc. v. Am. States Ins. Co.*, No. 09 CV 2885, 2016 WL 4366494, at *4 (N.D. Ill. Aug. 16, 2016), quoting *Whitehead*, 680 F.3d at 930.

Plaintiff argues that he is entitled to a new trial due to the claimed evidentiary errors that he says prejudiced him, and that he says cumulatively deprived him of a fair trial. Specifically, Plaintiff argues for a new trial on three asserted grounds: (1) Plaintiff disagrees with the Court's decision to overrule his objections to cross-examination questions asking Plaintiff whether he had produced photographs he had taken of himself on a cruise and had posted on social media; (2) Plaintiff disagrees with the Court's decision to limit his jury arguments for future emotional distress damages because the record contained insufficient support for that argument; and (3) Plaintiff has a variety of quarrels with the Court's discretionary evidentiary rulings and claims he was prejudiced as a result of those rulings. Memorandum of Law in Support of Plaintiff's Motion for New Trial ("Pl. Mem."; D.E. 232-1) at 1-5. Pursuant to the above standards and the long-standing principle that "civil litigants are entitled to a fair trial, not a perfect one, and … a new trial will not be ordered unless there was an error that caused some prejudice to the substantial

rights of the parties," *Lemons v. Skidmore,* 985 F.2d 354, 357 (7th Cir. 1993), the Court addresses each argument raised by Plaintiff.

**I.**      **The Court's Decision To Allow Limited Cross-Examination of Plaintiff About His Failure To Produce Certain Photographs Was Not Error, Let Alone Reversible Error Under Rule 59(a).**

Plaintiff's first argument involves three photographs of Plaintiff that were posted on his Facebook page but not produced to defense counsel or admitted into evidence at trial. Plaintiff's sibling testified on cross examination, without objection, that Plaintiff had taken the photographs of himself while taking a cruise vacation within the previous year. Subsequently, the Court permitted defense counsel, over objection, to ask Plaintiff a limited set of questions on cross-examination about his not having produced those photographs in the litigation. Plaintiff complains that he should receive a new trial because he was unfairly prejudiced by this questioning, which he claims damaged his credibility and discredited his claims that his injuries from the rear-end collision had disabled him and had caused him a loss of normal life. The Court does not agree, for the reasons stated below.

The Court notes initially that the context for the defense cross-examination of Plaintiff about photographs of himself on the recent cruise vacation came amid other trial evidence about Plaintiff's vacation and leisure activities. The trial testimony included references to various post-accident trips Plaintiff took and photographs of him at a variety of vacations posted onto his Facebook page or sent to family members. Tr. at 472-74, 556-58, 574. That testimony included his sibling's statement that Plaintiff posted photographs of himself smiling while on a cruise in 2022 to his Facebook page. Tr. at 472-74. Plaintiff himself testified on cross-examination that he sent photographs of himself on the cruise to family and posted photographs of himself from Las

Vegas and Atlanta trips to his Facebook page without making them publicly available to view. Tr. at 556-58, 574.

Defendant claims it was not in possession of the cruise and Atlanta trip photographs because Plaintiff did not produce them despite his continuing duty to do so pursuant to Fed. R. Civ. P. 26(e)(1). Defendant's Response in Opposition to Plaintiff's Rule 59 Motion for a New Trial ("Def. Resp."; D.E. 246) at 9. The Court did not at the time of trial, and need not at this time, resolve the nature of the continuing obligation to produce relevant items and seasonably supplement prior to trial. The question now is whether Plaintiff could be entitled to a new trial as a result of the Court's rulings.

In those rulings, the Court sustained Plaintiff's objection but allowed defense counsel to ask limited questions surrounding the photographs based on Rule 402, later overruling Plaintiff's objections to those questions and to defense counsel's follow-up during that line of questioning. Tr. at 563-64, 574. Along the way, the Court paused the trial to hold a sidebar, outside the presence of the jury, to hear the parties on the question of whether the defense should be allowed to ask Plaintiff on cross-examination about his non-production of photographs of himself on a recent cruise. Tr. at 559-64. During that sidebar, Plaintiff's counsel repeatedly asserted that "discovery issue[s] should be handled pre-trial" and are "to be handled outside the presence of the jury." Tr. at 559, 561. The Court, though, explained that its view was slightly different, in that the admissibility of evidence in a federal trial turned more on Rule 402 relevancy and Rule 403 balancing of probative value against substantial risk of unfair prejudice. Tr. at 563-64. Plaintiff never advanced a basis for the Court to find that unfair prejudice associated with questions about the photographs substantially outweighed the probative value associated with the answers to those questions. *See* Fed. R. Evid. 403.

Instead, Plaintiff clung to counsel's supposed truism that these issues can never be the subject of inquiry before the jury. Plaintiff cited no authority at trial and cites none now to indicate that discovery matters can *never* be admitted at trial. The Rules of Evidence contain no categorical bar on references to discovery during trial, but per the Court's own research, federal courts have allowed limited admissibility of discovery matters (namely the nonproduction of documents) if, in the trial court's discretion, the balancing of prejudice and probative value allows it as part of a legitimate challenge to witness credibility. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 306-08 (2d Cir. 1979) (holding that trial court did not err by allowing cross-examination of expert witness about his non-production of a memorandum highly relevant to his credibility). In *Berkey*, the Second Circuit held that the district court had not abused its discretion by allowing the expert to be cross-examined about his not having produced the "explosive" memorandum. *Id.* The Second Circuit so held even while recognizing that the examination before the jury "cast[] Kodak's attorneys, and the defendant itself, in a highly unfavorable light," in that the cross-examination was "highly relevant to an assessment of the independence of judgment and probity of one of Kodak's principal witnesses." *Id.* at 308. "Where the trial judge has taken great care to balance the probative value of the evidence against the prejudice that may accrue from its introduction, we think it inappropriate to substitute our judgment for his." *Id.*

Here, as the trial evidence of Plaintiff's vacation activities unfolded, and with Plaintiff on the stand, the defense sought to ask him about the Facebook cruise photographs that he had taken of himself. By the time of that questioning, Plaintiff's sibling had acknowledged having seen the photos on Facebook. More specifically, and without objection by Plaintiff's counsel, defense counsel elicited the following testimony from Plaintiff's sibling:

Q.    In terms of the cruise that you're aware of, you're aware that he posted pictures on Facebook of him going on that cruise?

A.      Yes.

Tr. at 474.  Plaintiff also himself testified on cross-examination, before the questions to which he objects, that he sent photographs of himself on the cruise to family and posted to Facebook photographs of himself on additional trips to Las Vegas and Atlanta, without making them publicly available to view.  Tr. at 556-58, 574.

The photos were highly relevant to Plaintiff's credibility, insofar as he claimed loss of normal life and yet took a cruise vacation but had not produced the photographs he had taken of himself there and then had shared with others on Facebook. The Court sought to limit the permissible questions to avoid a suggestion, in the testimony, that Plaintiff had committed a "discovery violation" – which instead was Plaintiff's counsel's characterization of the questions. Tr. at 562, 574.  The trial court allowed defense counsel to ask Plaintiff about (1) whether Plaintiff was aware the photographs had been requested; (2) whether Plaintiff had produced them to his counsel; and (3) whether Plaintiff knew if his counsel had produced them.  Tr. at 564.  Thereafter, Plaintiff testified that he knew the defense had asked for photographs of him post-occurrence and that he did not produce them.  Tr. at 558, 565, 573-74.  Additionally, Plaintiff testified that he understood that the defense had asked him to preserve his Facebook page.  Tr. at 574.  The photographs were ultimately not offered into evidence by the defense, and the Court barred Defendant from showing the jury or cross-examining Plaintiff with Plaintiff's response to Defendant's Rule 34 document requests, as a discovery matter the Court saw as irrelevant.  Tr. at 567.

The questions defense counsel wound up asking, representing the heart of Plaintiff's objection, were directed at whether Plaintiff knew the defense had asked for post-accident photos of him, including any on Facebook, and whether he did not produce to his counsel the pictures of

9

himself while on vacation. Tr. at 573. Plaintiff's objection referred to Plaintiff's counsel "never [having] seen these photos she's [counsel's] referring to" Tr. at 574, but that was beside the point, which was that the photos were no longer available to Defendant despite Plaintiff having had control of them sufficient to allow him to post them to Facebook within the past year. And Plaintiff admitted, in response to a question about whether there had been "photographs of you recently taken on the cruise" on Facebook, that "I would imagine there was probably a public photo somewhere." Tr. at 574.

These cross-examination questions were fair game, because Plaintiff was advancing loss of normal life claims yet had been photographed, admittedly, taking a cruise vacation, and the existence of those photographs made a fact in issue – namely whether his injuries prevented him from living a normal life – less probable. Fed. R. Evid. 402. Plaintiff's not having produced the photos bore upon his credibility. *Berkey*, 603 F.2d at 306-08. The Court's determination that under Rule 403 the risk of unfair prejudice did not substantially outweigh the probative value, as to credibility, of Defendant's limited inquiry into the non-production of the cruise photos was a sound exercise of discretion, particularly where, during Plaintiff's objection to these questions at trial, Plaintiff never spelled out for the Court why the Rule 403 balancing should come out differently, arguing only that references to pretrial discovery issues simply should never be before the jury. Tr. at 559, 561. Construing Plaintiff's trial argument liberally in his favor, Plaintiff's trial objection was directed at Rule 402 relevancy of "discovery" matters, and not at prejudice, a substantial risk of unfair prejudice, or the "severe" prejudice that Plaintiff now claims in his Rule 59 motion. "A litigant who fails to press a point by supporting it with *pertinent* authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990).

10

*See also Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) ("[W]e have made clear that . . . perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Here, Plaintiff accordingly has forfeited the point during trial; and even if the Court indulges him now, his briefing on his Rule 59 motion fares no better because the Court acted within its discretion in allowing the cross-examination after a careful balancing of probative value against substantial risk of unfair prejudice. *Berkey*, 608 F.2d at 308.

Plaintiff also did not argue at trial that he was "severely prejudiced" by the defense's "[i]nsinuat[ion]" that Plaintiff had "failed to produce evidence" and by the "adverse inference" that the jury could have drawn from that testimony. Pl. Mem. at 1-2. Plaintiff makes this argument for the first time in his post-trial motion, citing *Berry v. Deloney*, 28 F.3d 604, 609 (7th Cir. 1994), which is distinguishable from the case at hand. *Berry* was not a case in which the court of appeal reversed a trial court or found that it had erred by admitting testimony of a party's failure to produce evidence in discovery. Rather, in *Berry*, the Seventh Circuit upheld the district court's exercise of discretion in barring trial testimony that a school district had failed to produce the defendant truant officer's report. *Id.* The Seventh Circuit noted that there were numerous possible reasons for the lack of production, all of them beyond the defendant's control, such as whether the school district – and not the truant officer – had lost the document or simply had failed to properly respond to the subpoena. *Id.* These were arguments that Plaintiff in this case did not advance and likely could not have advanced, because here, unlike in *Berry*, Plaintiff himself possessed and controlled the cruise photos he recently placed on Facebook, as his sibling had testified.

Plaintiff's reliance on *Rutledge v. St. Anne's Hosp.*, 230 Ill. App. 3d 786, 794-95 (1st Dist. 1992), is similarly of no avail. Plaintiff cites *Rutledge* for the proposition that insinuation that the other party was hiding evidence, in violation of the party's own motion *in limine*, constituted

reversible error. Perhaps the attraction of *Rutledge*, for Plaintiff, was the posture in which the evidence's proponent offered it in violation of that party's own *in limine* motion, insofar as Plaintiff here argued that Defendant *"moved in limine* to bar the use of these photographs and others not produced prior to Nov. 30, 2022, and to bar any insinuation of Defendant's withholding evidence." Pl. Mem. at 2 (record citations omitted). And Plaintiff asserts in his Rule 59 brief that these two defense motions *in limine*, Nos. 1 and 25, were granted without objection. See Pl. Mem. at 2; Pl. Reply at 2.

But that is not what happened. The Court *denied without prejudice* the two defense motions *in limine* to which Plaintiff now points.[2] The Court specifically "reserve[d] ruling for any particular instances that may arise at trial." 7/6/23 Order at 16. That makes the circumstances of this case completely unlike *Rutledge*. Additionally, in *Rutledge*, despite a stipulation that plaintiff's doctor was unavailable to testify at trial and was not under either party's control, defense counsel highlighted the missing testimony in closing arguments and questioned why the plaintiff did not call the doctor. 230 Ill. App. 3d at 790-91.

Plaintiff's assertion that the Court committed reversible error for admitting evidence that the Court itself had excluded through its *in limine* rulings is equally wrong and similarly renders his citation to a third precedent, *Kutchins v. Berg*, 264 Ill. App. 3d 926 (1st Dist. 1994), entirely unhelpful. *Kutchins*, citing *Rutledge*, also involved a party violating a specific *in limine* order by the trial court, *id.* at 930-31, and like *Rutledge*, *Kutchins* is inapposite to the case here. Moreover,

---

[2] The Court makes no inference that Plaintiff's characterization of the Court's rulings on these two defense motions was a deliberate misrepresentation. But perhaps more care was due in reviewing what the trial record actually was. Plaintiff here argued in its reply brief that Defendant attempted to mislead the Court on this issue by making claims without citation to the record (Pl. Reply at 4), yet Plaintiff himself grossly misstated the foregoing *in limine* rulings – and without citation to the record. *See* Pl. Mem. at 2; Pl. Reply at 4.

in its pretrial *in limine* rulings on defense motion Nos. 1 and 25, the Court was within its discretion to wait for the trial evidence and context before ruling more definitively on what references might be made to discovery issues.[3]

Even if the Court had granted the two defense motions *in limine*, "the district court may adjust a motion in limine during the course of a trial." *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006); *see also Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013) ("Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial. As a trial progresses, the presiding judge remains free to alter earlier rulings."). The Court advised the parties of as much in its pre-trial *in limine* Order:

> Trial courts have broad discretion in ruling on evidentiary issues before trial, and the Court may adjust such pre-trial rulings during the course of the trial. *Pryor v. Corrigan*, No. 17-cv-1968, 2023 WL1100436, at *1 (N.D. Ill. Jan. 30, 2023). The Court "might learn more as the case unfolds, and that additional information may change this Court's assessment of the admissibility of the evidence. But in the meantime, this Court makes the following rulings so that the parties can plan ahead and prepare for trial accordingly." *Id.*

---

[3] It bears noting that defense motion Nos. 1 and 25 were among some 39 motions *in limine* filed by Defendant and set forth no more than a short paragraph in support of the requested relief on each of those two motions. Some of the defense motions contained more substantial briefing, as did some of Plaintiff's motion *in limine*, of which there were 64. Perhaps Plaintiff's counsel in preparing the instant Rule 59(a) motion got lost in the sheer volume of the more than 100 motions *in limine* that the parties filed in this traffic accident case and that the Court dutifully sorted through. D.E. 195, 196. Or, perhaps Plaintiff read only the summary minute order stating that defense motion Nos. 1-27 were granted in part and denied in part (D.E. 195), as those motions had been grouped into a single filing (D.E. 132), and perhaps Plaintiff did not read on to the Court's actual 19-page signature order, 7/6/23 Order, which made clear in detail which of that set were granted and which were denied. Whatever the reason, Plaintiff unfortunately either forgot this aspect of the record or misread it and then made its mischaracterization the centerpiece of his lead argument on the Rule 59(a) motion. In any event, had Plaintiff been conversant with the Court's 19-page order on motions *in limine*, he would have seen that in denying defense motion Nos. 1 and 25 without prejudice, the Court was most concerned with not permitting either party to offer evidence that the party had not produced – a situation very different from the one to which Plaintiff objects in the instant motion, i.e., a personal injury plaintiff taking photographs of himself taking a post-accident cruise trip and sharing them on Facebook, and then being cross-examined about them and about his having not produced them in the litigation.

7/6/23 Order at 3. After all, trial courts have broad discretion in ruling on evidentiary questions, including with regard to issues of production. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Hirlston v. Costco Wholesale Corp.*, 81 F.4th 744, 755 (7th Cir. 2023) (stating that the requirements of Rules 26(a) and 37(c) "may be modified by the district court, and their enforcement is left to the court's sound discretion," and affirming that the trial court's admittance of two late-disclosed photographs was not an abuse of discretion in the give-and-take milieu of the trial).

The district court's decision in *Hirlston v. Costco Wholesale Corp.*, No. 17-cv-04699-TWP-MPB, 2022 WL 1555220, at *5 (S.D. Ind. May 17, 2022), *aff'd*, 81 F.4th 744 (7th Cir. 2023), is instructive. The *Hirlston* district court decision noted that the plaintiff argued that the photographs damaging to him in that case should not have been admitted because they were not produced during discovery and were to be excluded under the order *in limine*. Yet, the district court in *Hirlston* still held the photographs were appropriately admitted into evidence. *Id.* at *7. In the instant case, the Court took a far lesser step. Instead of admitting evidence not produced in discovery and excluded by an *in limine* order, the Court merely allowed limited cross-examination of Plaintiff on the existence of the cruise photographs (about which the jury already had heard, from the mouth of one of Plaintiff's own witnesses) and on Plaintiff's not having produced them despite having been asked for them. The Court acted within its sound discretion to permit defense counsel to cross-examine Plaintiff within the narrow parameters set forth by the Court on the failure to produce the photographs.

The Court did not err in allowing the defense to cross-examine Plaintiff about his failure to produce the cruise photographs, but any error would have been harmless. There is no way the Court could conclude that as a result of that cross-examination, Plaintiff's verdict "cries out to be

14

overturned" or is "a miscarriage of justice." *Whitehead*, 680 F.3d at 928. This $122,500 verdict may have yielded a far lesser damages award than Plaintiff sought, based on the jury's assessment of his injuries and the causation issues, but any error concerning the cross-examination about the cruise photos would not be sufficient to disturb the verdict based on supposed "severe prejudice" that Plaintiff's counsel failed to raise when the Court took time out from the trial to allow the parties to make their arguments. The evidence of Plaintiff's leisure activities after the accident, including his taking a cruise vacation during the year before the trial and his having photographed himself while on that cruise, was already in the record, leaving the jury with ample evidence that Plaintiff was not disabled, and that his normal life was not hindered, to the extent he claimed in his plea for damages. On Rule 59 review, the Court is required to look at the evidence as a whole and to consider whether any error was harmless. *See Chicago Import*, 2016 WL 4366494, at *6 (denying defense's Rule 59 motion seeking to set aside plaintiff's civil trial verdict in insurance coverage trial in which the defendant insurer claimed that a damaging fire was intentionally set, and trial court had admitted expert testimony that electrical failure could not be ruled out as the fire's cause, but even without that testimony, "there was ample evidence from which the jury could conclude that the fire was not intentionally set."). Under all circumstances, nothing about Trulite's limited cross-examination of Plaintiff about his non-production of the cruise vacation photographs amounted to a miscarriage of justice, a significant chance that any error here affected the jury's verdict, a substantial or injurious impact on the verdict, or anything close to a circumstance that cries out for the overturning of this verdict.

Plaintiff was not denied a fair trial and is not entitled to a new trial on this basis.

## II. The Court Did Not Err in Limiting Plaintiff's Future Emotional Distress Argument.

Plaintiff next contends (Pl. Mem. at 4) that the Court's decision barring future emotional distress damages from being presented to the jury through the jury instructions and thus the verdict form was reversible error, because Plaintiff claims that he met his evidentiary burden to present future emotional damages to the jury. The Court rejected this argument by Plaintiff at the jury instruction conferences and in the Court's 7/18/23 Order, and the Court rejects it again now.

To begin with, the Court addressed this issue extensively during the jury instruction conference on July 17, 2023, and on the record in open court, by hearing argument. After asking Plaintiff's counsel for record support for arguing future emotional distress damages to the jury, Plaintiff's counsel mentioned several witnesses, but the Court stated that it was not certain that any of them had testified to such *future* damages sufficiently to support submitting that question to the jury. Tr. at 1244-45. The Court stated that it did not have a precise memory of what those witnesses' testimony was on this point and directed Plaintiff's counsel to review the record again, giving counsel time to do so. Tr. at 1245, 1248-49, 1254. The Court's initial refreshment of its recollection about that testimony led the Court to a "preliminary conclusion" that "I didn't really see that testimony [of Dr. Steven Elliott Rothke, Ph.D.] as really sufficiently bringing out a quantum of opinion evidence about permanency, about future emotional distress damages to warrant that going to the jury." Tr. at 1348. Plaintiff's counsel then further recounted testimony by Dr. Rothke, a neuropsychologist and one of Plaintiff's expert witnesses, that Plaintiff was "afraid" that his condition would get worse over time as he aged, and counsel also pointed to the testimony of Plaintiff's treating physicians, Drs. Joseph Neubauer, M.D. and Richard Cristea, M.D., about the "permanent" or ongoing nature of Plaintiff's claimed anxiety and depression. Tr.

16

at 1348-50.  The Court stated that it wished to review rough notes of the Dr. Neubauer and Dr.

Cristea testimony further. Tr. at 1349-50.  A short time later, the Court ruled:

> Let me tell you where I came out. I reviewed, with the help of my law clerk, the
> Cristea deposition testimony, the testimony of Neubauer, and also the testimony
> you pointed me to from Rothke.  And I have concluded that to the extent that
> testimony touched upon a permanency or a future ex[is]tence of these emotional
> distress damages, it was very much in passing. So we're given great discretion by
> the Court of Appeal about whether the evidence is -- the instruction is a correct
> statement of law and also whether it's supported by the evidence. I think that one,
> though, is not sufficiently supported by the evidence. So I think we would then
> strike from the instructions the reasonable future value of emotional distress
> damages. So that's our ruling on that one.

Tr. at 1434-35.

The Court later followed up with a detailed written order.  7/18/23 Order (D.E. 220).[4]  In

the ruling, the Court considered both parties' arguments, and, once again, extended much leeway

to Plaintiff including allowing him to make his record and to add additional authority even after

the close of evidence and as the jury was about to be instructed.  Tr. at 1456-57.  All of the

additional authority Plaintiff's counsel then cited were cases that counsel said "stand for the

proposition that the plaintiff does not need expert testimony in order to support a verdict for

emotional distress, Your Honor."  Tr. at 1456-57.  But as the Court then made clear:

> And my ruling is not based on an absence of expert testimony. It's based on a dearth
> of record evidence connecting or suggesting that there were future or permanent
> emotional distress harm. My ruling is based on the term -- the use of the term
> "chronic" by one witness to not be sufficient, the use of a present fear of not being
> able to do everything he wanted to do, not sufficient in terms of a permanent
> emotional distress injury, and then the portion that we reviewed from Cristea as
> well, that taken together all of that evidence was not sufficient to support that
> instruction.

Tr. at 1456-57.  Yet in Plaintiff's Rule 59(a) briefing, Plaintiff continues to labor under the

misconception that the Court was denying the future emotional distress damages instruction based

---

[4] The Court assumes familiarity with its July 18, 2023, Order and incorporates it herein by reference.

on a failure of expert testimony, citing some of the same Illinois authorities. Pl. Mem. at 5. To be abundantly clear, the Court did not base its denial of the future emotional distress damages instruction based on a deficiency of *expert* testimony, but rather on the lack of evidence in the record from *any* witness to support the proposed instruction. On the Rule 59(a) briefing, Plaintiff relies only on the Dr. Rothke testimony, *id.*, which, as noted above, the Court explicitly said it had examined and had found to be wanting on the question of future emotional distress. The Dr. Rothke evidence, and the evidence from the two treating physicians Plaintiff's counsel mentioned during the instruction conference, was hardly "overwhelming," as Plaintiff now contends, in what can only be called an exaggeration. *Id.*

In addition, Plaintiff argues the wrong point when he cites Illinois authority to the effect that emotional distress is a component of recoverable damages in a personal injury action and that plaintiffs deserve a jury instruction and compensation for that aspect of their suffering, if indeed such plaintiffs actually sustained that injury. *Id.* at 5, citing *Marxmiller v. Champaign-Urbana Mass Transit Dist.*, 2017 IL App (4th) 160741 ¶¶ 52-53. With that proposition, the Court has no quarrel. The problem in Plaintiff's trial was his failure to present sufficient evidence that he had actually sustained an injury inflicting future emotional distress. Illinois Pattern Jury Instruction Civil No. 30.05.01 for past and future emotional distress allows jurors to consider that form of damages "when the evidence justifies its use." IPI 30.05.01, notes on use (2022). As the Seventh Circuit stated, in a future wage loss context that is instructive here, a party "needs to furnish 'some evidence' to earn a jury instruction." *Reed v. Union Pacific R.R. Co.*, 185 F.3d 712, 719 (7th Cir. 1999), quoting *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 406 (1998). "Whether that evidence is too speculative or whether it provides a sufficient basis for taking the issue to the jury is a judgment

call." *Page v. Equity Residential Prop. Mgmt. Corp.*, No. 99 C 5597, 2002 WL 531436, at *1
(N.D. Ill. Apr. 9, 2002).

Applying that principle to future emotional distress damages, the Court in its discretion
and judgment found that the record, viewed as a whole, did not support this instruction.  Now that
a full trial transcript is available, the Court has reviewed the relevant testimony again and in further
detail on this Rule 59(a) motion.  First and foremost, Plaintiff himself testified that his claim for
damages stemmed *only* from his alleged injuries to his cervical spine and shoulder.  Tr. at 613.  In
light of Plaintiff's own testimony negating other damages, the testimony of Dr. Rothke, Ph.D., and
Dr. Neubauer, M.D., was not enough to support the proposed instruction on future emotional
damages.  Dr. Rothke, a neuropsychologist, testified that he diagnosed Plaintiff with "adjustment
disorder with depression and anxiety" which he defined as a reaction to a significant life event
such as an illness or injury.  Tr. at 798, 803-04.  He described Plaintiff's disorder as improving
and did not testify that the disorder was permanent.  Tr. at 806, 807-08, 811.  Dr. Neubauer,
Plaintiff's primary care physician, testified that Plaintiff reported that he was experiencing lack of
concentration and trouble with sleeping and motivation, which the doctor described as "secondary
depression."  Dep. [admitted at trial (Tr. 492)] of Dr. Neubauer; D.E. 232-3 at 38, 68-69.  Dr.
Rothke's testimony that Plaintiff had various "fears" about the impact of his injuries on his normal
life and outlook and the testimony of Dr. Neubauer that various other injuries of Plaintiff (but not
the depression, which he described as only "secondary") were "chronic" was not enough to support
the proposed instruction on future emotional distress damages. The Court's review of the transcript
thus bears out the conclusions it reached in the moment on this issue during trial, ruling on jury
instructions in the moment as trial courts often must do.  Further, the Court acknowledged in its
written order that Plaintiff and other witnesses (such as Plaintiff's sibling) testified to various

behavioral changes in Plaintiff since the accident, but Plaintiff's counsel did not argue that this testimony supported the future emotional distress damages instruction, and as we have explained, "probably for good reason, because plaintiff excluded any mental health damages from his own recitation of his claims on the witness stand."[5]  7/18/23 Order at 7; Tr. at 613, 1243-45.

Plaintiff's reliance on *Sloan v. Jasper Cnty. Cmty. Unit Sch. Dist. No. 1*, 167 Ill. App. 3d 867, 870 (5th Dist. 1988), for the proposition that the denial of emotional damages was reversible error is misplaced because the *Sloan* court's holding was at the pleadings stage of the case, ruling that it was error for the trial court to strike allegations of emotional damages from the complaint. Here, by contrast, the case was in its trial stage, with testimony and evidence admitted in the record at trial so that the trial judge could make the "judgment call" that the evidence was too speculative to allow its presentation to the jury.  *Page*, 2002 WL 531436, at *1. Plaintiff's reliance on a decision rendered at the pleading stage speaks volumes about the weakness of this argument in this case's current Rule 59(a) posture.

Plaintiff tried to overcome the deficit of evidence of permanent emotional distress damages in the record by arguing in his Rule 59(a) reply brief that because Dr. Cristea, Plaintiff's treating neurologist, testified that Plaintiff's physical injuries, including his pain, are permanent in nature, it follows that his emotional conditions stemming from his "ongoing pain" noted by Dr. Rothke are likely permanent as well.  Pl. Reply at 7.  The attenuated and speculative nature of this argument only underscores how the Court did not err in declining to send this component of Plaintiff's damages theory to the jury, particularly given that Dr. Cristea testified that although he

---

[5] Plaintiff testified that he feels anxious and "get[s] really sad" which he thinks is based on his "circumstance."  Tr. at 549.  Plaintiff's sibling testified that before the collision Plaintiff was a "pretty enthusiastic, happy guy," and since the accident, "he's pretty much in pain, I would think, most of the time," that he is "very uncomfortable usually," and that "he's cried many times."  Tr. at 458, 462.  Plaintiff's adult stepchild testified that since the accident Plaintiff's demeanor is "downtrodden, uncertain, not confident about himself, and just kind of defeated."  Tr. at 843-44.

believed Plaintiff suffered from anxiety and depression, the doctor described only Plaintiff's physical conditions as permanent. Tr. at 693, 695, 732, 779-80. In fact, Dr. Cristea did not testify that Plaintiff's anxiety and depression were even caused by the accident because no proper foundation for the opinion had been laid by counsel for Plaintiff. Tr. at 689, 703.

Notwithstanding this Court's ruling that Plaintiff was not entitled to an instruction of future emotional distress damages, Plaintiff's counsel still argued in his rebuttal closing argument that Plaintiff will have future "mental suffering" because he will have anxiety and depression for "the rest of his life." Tr. at 1526-27. The Court sustained defense counsel's objection to this statement, but the cat was already out of the bag, so that Plaintiff argued this theory anyway, even if it was nowhere on the verdict form. Plaintiff's counsel's comments in rebuttal were not enough to support an instruction; the cases Plaintiff relies upon confirm that Plaintiff was still required to offer evidence that his anxiety and depression were a result of the accident and permanent in nature. Pl. Mem. at 5, citing *Wood v. Mobil Chem. Co.*, 50 Ill. App. 3d 465, 477 (5th Dist. 1977). *Wood* held that where the evidence established the plaintiff suffered from anxiety and depression traceable to his inability to function due to brain damage, this "mental condition" constituted mental suffering and was a proper element of damages for jury to consider. *Id.* The Court's sustaining of defense counsel's objection to this argument was hardly "erroneous[]," as Plaintiff contends, Pl. Mem. at 5, even if that were material to Plaintiff's arguments about the instructions and verdict form.

As this Court previously ruled, Plaintiff's counsel's comments in rebuttal that the jury's damages award should include future emotional distress, a mere one day after the Court's ruling to the contrary, rang the bell on this issue "loudly enough to scotch any argument now that plaintiff was prejudiced by the Court's ruling." 7/18/23 Order at 7. And the Court further noted that:

> Our court of appeals gives district courts substantial discretion to formulate the instructions provided that the instructions, when reviewed as a whole, provide a complete and correct statement of the law and have support in the record. *United States v. Edwards*, 869 F.3d 490, 496 (7th Cir. 2017); *EEOC v., AutoZone, Inc.*, 809 F.3d 916, 921-22 (7th Cir. 2016); *United States v. Jefferson*, 334 F.3d 670, 672 (7th Cir. 2003). District courts also have broad power to determine the proper method for preparing a case for trial. *Mizwicki v. Helwig*, 196 F.3d 828, 833 (7th Cir. 1999).

*Id.* at 2. The Court acted within its discretion in making the necessary judgment call about whether a claim for future emotional distress damages had enough support in the trial record to go to the jury. The Court made that judgment call cautiously, after allowing Plaintiff multiple opportunities to cite to the trial testimony, and after undertaking a careful review of that testimony. Even now, Plaintiff's Rule 59(a) brief is notably lacking in citation to trial testimony that would have supported his position at trial. Plaintiff was not unfairly prejudiced by the Court's refusal to include an instruction for future emotional distress damages, that refusal was not error, and Plaintiff is not entitled to a new trial on that basis. And in the end, the jury valued Plaintiff's past emotional distress damages at only $5,000, suggesting that the jury did not see those damages as extensive. It is difficult to imagine that the Court's refusal to instruct the jury on future emotional distress damages could have had the kind of substantial and injurious impact on this jury's verdict as the law would require for a new trial. If it had any effect at all, that effect was miniscule. Any error associated with the trial court's discretionary ruling with respect to future emotional distress damages would not rise to the level of a miscarriage of justice and would not cry out for an overturning of the jury's considered verdict. The Court cannot order a new trial on this ground.

### III. The Court's Evidentiary Rulings Did Not Deprive Plaintiff of a Fair Trial.

Plaintiff's argument that a smattering of supposed evidentiary errors at trial unfairly prejudiced him and should give him a second opportunity to ask a jury to place a far higher value on his injuries fails. His contentions that the Court committed multiple evidentiary errors are a

potpourri of arguments without merit. A party seeking a new trial based on allegedly erroneous evidentiary rulings bears a "heavy burden." *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 942 (7th Cir. 2001). Courts review such rulings for abuse of discretion and give "considerable deference to the trial judge." *Id.* A court will grant a new trial "only if the error had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *EEOC v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012), quoting *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 564 (7th Cir. 2006). "Evidentiary errors satisfy this standard only when a significant chance exists that they affected the outcome of the trial." *Mgmt. Hosp. of Racine, Inc.*, 666 F.3d at 440, quoting *Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1082 (7th Cir. 1998). In addition, "courts have considerable discretion in deciding whether to exclude evidence under Rule 403." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234 (7th Cir. 2021). The moving party must show an abuse of discretion in the evidentiary rulings, which is difficult to do. *Rodriguez v. Anderson,* 973 F.2d 550, 553 n.3 (7th Cir. 1992).

### A.     Plaintiff's Amended Motion *in Limine* #64 (ECM Data)

Plaintiff argues that the Court erred in denying Plaintiff's motion *in limine* No. 64[6] concerning ECM data allegedly taken from Defendant's truck at the time of the collision. In his amended motion *in limine* No. 64, Plaintiff sought sanctions under Fed. R. Civ. P. 37(c) against Defendant for the purported failure to produce ECM (vehicular telemetric) data from Defendant's truck on the date of the accident by (1) excluding Trulite truck driver Donnell's testimony regarding the speed at which he struck Plaintiff's van, and (2) instructing the jury to presume that the ECM data was unfavorable to Defendant. D.E. 170 at 5. The Court denied this amended

---

[6] Plaintiff references his motion *in limine* No. 64 (D.E. 169), but that was terminated by Plaintiff filing his amended motion *in limine* No. 64 (D.E. 170). Like Defendant, the Court presumes that Plaintiff intended to reference the amended motion.

motion *in limine* without prejudice, finding that the motion did not explicitly seek an evidentiary ruling at the time.  D.E. 195, D.E. 196 at 15-16.

As discussed at length above, no prejudice was inflicted on the denial without prejudice of this amended motion *in limine*, because as a trial progresses, the judge remains free to alter earlier rulings.  *Perry*, 733 F.3d at 252.  Yet Plaintiff contends that he was substantially harmed by the denial of this motion based on comments made by defense counsel during opening statements that "Mr. Donnell was almost at a complete stop when he started sneezing, and his foot slipped off the brake, causing his box truck to move forward and causing the damage that you had seen to the rear of plaintiff's red van," which statements Plaintiff claims were made with knowledge that there was nothing to substantiate this claim.  Pl. Mem. at 6, citing Tr. at 302.  The Court does not agree and finds no error.

First, the failure of Plaintiff's counsel to object to this comment during trial resulted in waiver of the issue.  *Williams v. Dieball,* 724 F.3d 957, 964 (7th Cir. 2013) (explaining that the failure to object to opposing counsel's inflammatory statements describing evidence during opening statement waived the issue).  In addition, even if the issue was not waived, the Court, during preliminary instructions, informed the jurors that opening statements are not evidence.  Tr. at 279.  *See Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013) (finding that "[p]roviding a curative instruction protects against any prejudice resulting from a lawyer's reference during opening statements to evidence that ultimately is not admitted during trial").

Second, at trial, Donnell could not recall many specifics of the accident and did not even testify regarding the speed at which he was traveling, which was the testimony Plaintiff's motion *in limine* sought to exclude.  Tr. at 320-46.  Thus, Plaintiff fails to set forth, in his Rule 59 motion, any reason to believe he was unfairly prejudiced by either the Court's pretrial denial *without*

*prejudice* of Plaintiff's amended motion *in limine* No. 64 or by the portion of Defendant's opening statement to which Plaintiff did not contemporaneously object and as to which the Court properly instructed the jury. Plaintiff is not entitled a new trial on this basis.

> **B.** **Plaintiff's Motions *in Limine* Nos. 52 and 54 and Dr. Bauer's testimony to previously withdrawn opinions**

Plaintiff argues that the Court erred in denying his motions *in limine* Nos. 52 and 54 and in allowing defense medical expert Dr. Jerry Bauer to testify over objection to previously withdrawn opinions about Plaintiff's ability to work without conducting an examination. Dr. Bauer is a board-certified neurosurgeon who was retained by the defense. Tr. at 858. The Court denied these two motions *in limine* as to Dr. Bauer, finding that as to No. 52, the testimony about osteophytes was a logical corollary to Dr. Bauer's disclosed opinions, and as to No. 54, Dr. Bauer's disclosed opinion was not barred based on Dr. Nader Dahdaleh's records that "complaints of numbness and tingling would not preclude him from working as a supervising contractor." 7/6/23 Order at 10-11 (citation omitted).

Specifically, Plaintiff takes issue with Dr. Bauer's opinion No. 11 from his deposition, wherein the doctor had stated that he was "not going to testify about [Plaintiff's] current condition or his ability to work, correct" (Pl. Mem. at 7, citation omitted) and had no opinion about "whether or not today David Magnuson could work as a construction, home repair, remodeling supervisor or general contractor." *Id.* at 7-8, citation omitted. At trial, over objection, Dr. Bauer testified that based on his review of Dr. Dahdaleh's records, Plaintiff's symptoms of numbness and tingling would not have prevented him from working as a supervising construction contractor when his symptoms improved following surgery performed by Dr. Dahdaleh in the summer of 2019. Tr. at 933-35, 942-44. In keeping within this time frame, defense counsel made clear at trial that she was not asking the doctor if Plaintiff could do the work *today*. Tr. at 943. Dr. Bauer testified to

his understanding that Plaintiff would not have been performing any actual physical work while supervising construction and cautioned that he was not offering any opinion on whether Plaintiff had the ability to perform this work at the time of trial. Tr. at 943. The Court found Plaintiff's Rule 59(a) motion on this point to be less than clear about precisely how the Court's handling of Dr. Bauer's opinions or testimony could possibly amount to reversible error. And the Court sees no reason for a new trial on this issue. Plaintiff has cherry-picked Dr. Bauer's trial testimony and has taken the supposedly offending part of it out of context, but that testimony only becomes concerning, from a fair trial standpoint, if it is read out of context.

Moreover, because Dr. Bauer did not opine on Plaintiff's current condition or whether his injuries were permanent, the cases relied upon by Plaintiff are not applicable. *Soto v. Gayton*, 313 Ill. App. 3d 137, 143 (2d Dist. 2000); *Knight v. Lord*, 271 Ill. App. 3d 581 (4th Dist. 1995); *Marchese v. Vincelette*, 261 Ill. App. 3d 520, 525 (1st Dist. 1994); *Henricks v. Nyberg, Inc.*, 41 Ill. App. 3d 25, 27-28 (1st Dist. 1976). These cases concern the degree of recency needed to make admissible, or to permit a fact finder to give weight to, medical opinion testimony as to a patient's prognosis or the permanency of the patient's condition requires a recent examination. *See, e.g.*, *Decker v. Libell*, 193 Ill. 2d 250, 253-54 (2000); *Roach v. Union Pacific R.R. Co.*, 2014 IL App (1st) 132015 ¶ 55. But Dr. Bauer did not offer at trial any opinion regarding the permanency of Plaintiff's condition. Moreover, a "trial judge must have considerable leeway in deciding in a particular case how to go about determining whether a particular expert's testimony is reliable." *Passarella v. NFI Interactive Logistics, LLC*, No. 12 C 4147, 2016 WL 6134541, *7 (N.D. Ill. Oct. 20, 2016), quoting *Verbance v. Altman*, 324 Ill. App. 3d 494, 503 (2d Dist. 2001). Finally, Plaintiff was afforded the opportunity through cross-examination to challenge Dr. Bauer's testimony. In sum, the admission of Dr. Bauer's testimony falls within the broad discretion afforded trial courts

in managing the trial evidence. *Jenkins*, 316 F.3d at 664. The Court did not abuse its discretion in permitting this testimony, and Plaintiff is not entitled to a new trial as a result of its admission.

### C.      Impeachment of Dr. Bauer with testimony from a prior trial

Plaintiff next contends that the Court erred in not allowing his counsel to impeach Dr. Bauer with testimony from a prior trial in which the doctor served as an expert witness. Specifically, Plaintiff argues that the Court unfairly limited his cross-examination into Dr. Bauer's bias by sustaining defense counsel's objections to relevance and Rule 403 stemming from the earlier case, described by Plaintiff as the earlier "*Candalaria*" trial, in which Dr. Bauer had testified. Pl. Mem. at 9.

In hopes of impeaching the doctor during cross examination, Plaintiff sought to elicit testimony from Dr. Bauer about unrelated cases in which he had testified to demonstrate that he had a pattern of testifying to a temporary aggravation of a preexisting condition or degenerative disc disease. Tr. at 960-62. Defense counsel objected that allowing such testimony would amount to trying cases within a case. Tr. at 962-63. The Court sustained defense counsel's objections and at sidebar ruled that Dr. Bauer's opinion testimony offered in other cases was not impeaching, and that there was "a Rule 403 problem" because any probative value from allowing such a questionable impeachment was exceeded by the danger of confusing the jury with potentially time-consuming subtrials, remote from the subject matter. Tr. at 964-67.

On Rule 59(a) review, the Court sees Dr. Bauer's excluded testimony about how he may have assessed other, unrelated instances of temporary aggravation of pre-existing conditions such as degenerative disc disease as only marginally relevant, at best. Trial judges have wide latitude to impose reasonable limits on cross-examination based on concern about matters such as confusion of the issues or questioning that is only marginally relevant. *Cf. United States v. Rivas*,

27

831 F.3d 931, 934 (7th Cir. 2016) (holding that limiting a criminal defendant's cross-examination of forensic expert about unrelated matters was within trial court's discretion and did not violate Confrontation Clause). Plaintiff on the Rule 59(a) briefing does not cite any cases that have allowed such cross-examination through subtrials, relying on Illinois common law discussing bias as a permissible basis of impeachment,[7] as well as *Trower v. Jones*, 121 Ill. 2d 211, 220 (1988), which noted the "possible bias of medical witnesses and their potential predisposition to testify in favor of only one side of medical disputes has been frankly identified by the Illinois Supreme Court." Pl. Mem. at 10. The Court does not disagree, and Dr. Bauer's testimony on the extent of his past testimony for the defense side and for defense counsel's firm in particular (Tr. at 862, 967-68) did raise the possible bias of this witness to the jurors, who then had the ability to weigh and evaluate the credibility of Dr. Bauer. On direct examination by defense counsel, Dr. Bauer stated that in the 20 years he has worked as a medical consultant, he has testified in the range of 90 percent of the time for the defense. Tr. at 862. Dr. Bauer also testified to his previous retention by defense counsel or her firm, to his hourly rate, to the range he charged for reviewing records and giving a deposition, to the cost for his time in testifying at trial, and to his earnings in the years 2019, 2020, and 2021 for medico-legal work. Tr. at 862-64, 967-69.[8] All of this evidence was presented to the jury for its assessment of Dr. Bauer's credibility and potential bias.

---

[7] These Illinois cases have federal counterparts standing for the same general principle. *See, e.g.*, *United States v. Abel*, 469 U.S. 45, 50 (1984) (holding bias is a permissible and established basis of impeachment); *Abernathy v. Eastern Ill. R.R. Co.*, 940 F.3d 982, 992 (7th Cir. 2019) (finding bias is a "permissible and established basis of impeachment" with regard to the examination of the expert witness' financial ties to the defendant's parent company); and *United States v. Vasquez*, 635 F.3d 889, 898 (7th Cir. 2011) (finding that witness's testimony and MCC recordings were admissible extrinsic evidence to show the witness's bias and interest in trying to get her husband a lower sentence). But the question relevant to this argument is not whether witnesses may be impeached on bias – the question is whether the trial court acted within its discretion in curtailing cross-examination about the expert's marginally relevant testimony in a wholly unrelated matter.

[8] In the same vein, Plaintiff's expert witness, Dr. Herman, testified to his hourly rate, the range he charged for reviewing records and giving a deposition and the cost for his time in testifying at trial, and he testified

Having been provided ample opportunity to lay the groundwork for an argument as to Dr. Bauer's supposed pro-defense bias, Plaintiff cannot establish that the Court's limitation on his cross-examination of Dr. Bauer about the *Candelaria* case or any other case caused him any unfair prejudice, let alone enough to warrant overturning the jury's verdict as a miscarriage of justice under the Seventh Circuit's applicable standards on Rule 59(a) review. The Court acted within its sound discretion to bar Plaintiff from injecting into the trial the confusing and collateral issue of the *Candelaria* plaintiff's injuries – an issue too remote from the subject matter of Plaintiff's case.[9] The trial court's management of Dr. Bauer's cross-examination, individually or cumulatively, does not cry out for reversal of this jury verdict that Plaintiff sees as insufficient. The Court did not abuse its discretion, and Plaintiff is not entitled to a new trial on this ground.

### D. Plaintiff's motions *in limine* Nos. 51 and 23 and the 1997 car accident

Plaintiff next claims that the Court erred in denying his motion *in limine* No. 51 and allowing evidence and argument regarding Plaintiff's 1997 vehicle accident, and Plaintiff suggests that evidence of prior injuries violated his motion *in limine* No. 23. Plaintiff's motion *in limine* No. 51, which was denied by the Court, sought to bar evidence of Plaintiff's 1997 injuries at trial without expert testimony. D.E. 147; D.E. 196 at 3. Plaintiff's motion *in limine* No. 23, to bar cross examination of witnesses to Plaintiff's prior injuries that were not connected to his present injuries, was granted over objection but subject to later argument that Plaintiff opened the door to any of these issues. D.E. 131 at 5; D.E. 196 at 7.

---

that he was previously retained by Plaintiff's counsel or his firm and he lives in close proximity to Plaintiff's counsel. Tr. at 1178-80.

[9] Plaintiff declined to make a formal offer of proof with Dr. Bauer on the witness stand and never completed the offer of proof; Plaintiff's counsel stated he would make his offer of proof on this issue "later" but never followed through with it. Tr. at 967.

Plaintiff opened that door. During Plaintiff's opening statement, counsel referred to the 1997 car accident by stating that Plaintiff had a motor vehicle collision almost 20 years ago in which he had "some minor symptoms … primarily lower back… that resolved quickly," and that Dr. Neubauer would testify that the earlier crash "had nothing to do with this." Tr. at 287-88, 290. "[W]hen a party opens the door to evidence that would be otherwise inadmissible, that party cannot complain on appeal about the admission of that evidence." *Griffin v. Foley*, 542 F.3d 209, 219 (7th Cir. 2008), quoting *United States v. Gilbertson,* 435 F.3d 790, 797 (7th Cir. 2006) (internal citation omitted). And if Plaintiff opened the door partway during his opening statement, he flung it wide open by testifying on direct examination that he was involved in a rear-end accident around 1997, and that, as a result, he saw Dr. Neubauer for a lower back issue with stiffness that eventually went away. Tr. at 550-51.

 After Plaintiff opened the door to this testimony, Defendant pursued it not to show that Plaintiff's lower back injuries were related to the 1997 accident but, rather, to argue that the numbness and tingling after Plaintiff's 1997 accident were no more indicative of a traumatic spinal cord injury than they were after his 2017 accident, as defense counsel argued without objection in closing argument. Tr. at 1502-03. To that end, Defendant's expert, Dr. Bauer, testified that the 1997 accident did not cause Plaintiff's myelomalacia that was not diagnosed until 2018, even though Plaintiff experienced numbness or tingling after the 1997 accident. Tr. at 889, 948-49. Similarly, Dr. Bauer opined there was "no evidence of myelomalacia as suggested by a spinal cord injury causing myelomalacia as a result of [the 2017] accident," where Plaintiff also reported numbness immediately after the accident. Tr. at 883, 886, 936-37.

Plaintiff further takes issue with the Court's ruling sustaining defense counsel's objection to Dr. Cristea's testimony about the 1997 accident for lack of foundation. The Court gave Plaintiff

considerable leeway with this witness but explained in a detailed sidebar (that included an opportunity for Plaintiff's counsel to provide deposition transcript references) that resulted in the Court barring, for lack of pretrial disclosure and lack of foundation, Dr. Cristea's alleged opinion that the accident in 1997 had nothing to do with the current symptomology or with the symptomology at the time of the examination. Tr. at 708-19. As the Court ruled during trial, the opinions Dr. Cristea could give as a treating physician were not unlimited and required an adequate foundation. Tr. at 715. Plaintiff failed to provide an appropriate foundation at trial, and his post-trial briefing on the Rule 59(a) motion does not cure that defect. Moreover, Dr. Cristea testified at length about the nature of Plaintiff's radiculopathic neck injuries, nerve damage, spinal cord injuries, myelomalacia, and, most importantly, about the nature of the causal connection – in Dr. Cristea's view – between those injuries and the accident at issue in this case. Tr. at 666-67, 670-725, 681. The Court's decision to bar this one aspect of Dr. Cristea's testimony, because a proper foundation was not laid, does not add up to unfair prejudice or to grounds for a new trial even if it constituted evidentiary error or any prejudicial error, which it did not. A new trial cannot be granted on this ground.

### E. Defense reference to whether Plaintiff should have named one of his treating physicians as a defendant

Plaintiff argues that it was reversible error for defense counsel, over objection, and during closing argument, to question why Plaintiff did not sue Dr. Fliman for medical malpractice if Plaintiff thought his condition worsened due to Dr. Fliman's nine-month delay in ordering a cervical MRI scan and diagnosing myelomalacia. Tr. at 1507-08. Plaintiff contends that this "improper" argument "was meant to confuse and mislead the jury," and that Defendant thus "improperly pointed the finger at Dr. Fliman, after she gave favorable testimony to Plaintiff during direct examination." Pl. Mem. at 12. In Plaintiff's reply brief, Plaintiff adds that the defense

31

argument about Plaintiff not having sued Dr. Fliman "ultimately allowed the jury to conclude that Plaintiff was conceding that there was no delay in diagnosis during the treatment he received from Dr. Fliman that caused him damages by his failure to add her as a defendant when the reality is that even if that is the case, the Defendant remains liable despite Dr. Fliman's intervening negligence."  Pl. Reply at 12.

Plaintiff's argument about how the episode during closing argument prejudiced him at all, let alone to the degree that might warrant a new trial under Rule 59(a), is skeletal and speculative at best. The Court examines it under the applicable federal common law interpreting Rule 59(a), notwithstanding Plaintiff's again having submitted inapposite and unhelpful Illinois cases without offering a single federal decision.  In the Seventh Circuit, a new trial is warranted only if allegedly improper closing remarks depart from the evidence presented at trial and result in substantial prejudice to the opposing party.  *Cefalu v. Rocuskie,* No. 12 C 5995, 2014 WL 1563804, at *7 (N.D. Ill. Apr. 17, 2014), citing *Willis v. Lepine*, 687 F.2d 826, 834 (7th Cir. 2012). Accordingly, improper comments during closing argument rarely rise to the level of reversible error in the Seventh Circuit. *Id.*, citing *Willis*, 687 F.2d at 834; *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008).  This standard applies to Plaintiff's concerns about the defense closing argument comments concerning Dr. Fliman, as well as other closing argument comments that Plaintiff has shoveled into his Rule 59(a) motion, discussed further below.

Starting with Plaintiff's claim that defense counsel's comment about Dr. Fliman confused the jury or caused Plaintiff substantial prejudice, the fact remains that the jury was instructed that the lawyers' statements, including those in closing arguments are not evidence.  Jury Inst. at 7. Where any alleged confusion from an attorney's closing argument occurs in a case in which the Court instructed jurors that they are not to consider closing arguments to be evidence, no

substantial prejudice to the moving party can be shown, and no new trial is warranted. *Cefalu*, 2014 WL 1563804, at *7. As long as the jury is so instructed, no new civil trial is warranted for allegedly improper remarks in closing argument even if on Rule 59(a) review, a court finds flaws or imperfections with how the trial court responded to the comments during the trial. *Preston v. Chicago Police Officer Daniel Warzynski*, No. 10 C 0136, 2012 WL 4498294, at *4 (N.D. Ill. Sept. 28, 2012). "In any event, any imperfections in the court's response to these objections cannot be said to have caused Plaintiff to suffer 'substantial prejudice.'" *Id.* In addition, the Court properly instructed the jury that:

> If the defendant negligently caused injury to the plaintiff, then the defendant is liable not only for the plaintiff's damages resulting from that injury but also is liable for any damages sustained by the plaintiff arising from the efforts of health care providers to treat the injury caused by the defendant even if that health care provider was negligent.

Jury Inst. at 28; Tr. at 1466. The jury therefore was instructed to the effect that even if a subsequent treater – such as Dr. Fliman – had rendered negligent care to Plaintiff and had inflicted damages upon Plaintiff, Defendant still remained liable for those damages. Jurors ordinarily are presumed to follow their instructions, absent a showing of an "overwhelming probability" that the jurors did not or could not follow the instructions, *United States v. Garcia*, 81 F.4th 691, 698 (7th Cir. 2023), and Plaintiff has made no attempt to argue such an overwhelming probability here.

Accordingly, the Court concludes that even if defense counsel's reference to Plaintiff's not having sued Dr. Fliman was improper, and even if the Court should have sustained the objection, this case, like *Cefalu* and *Preston*, is not one of those rare few in which substantial prejudice has been or can be established to justify ordering a new trial under Rule 59(a) and the Seventh Circuit standards for application of that rule.

### F.    Plaintiff's contribution to his own injury without expert testimony

Plaintiff's next effort to characterize aspects of the defense closing arguments as reversible error cites the defense argument that Plaintiff contributed to his own injury.  Plaintiff is concerned that this argument was not grounded in expert testimony (Pl. Mem. at 12-13), while Defendant contends there was no error in allowing defense counsel to comment on evidence of Plaintiff's strenuous physical activities after the accident.  Def. Resp. at 20.  "If plaintiff's symptoms worsened when he engaged in physical activity, a lay person could reasonably infer that the physical activity cause his symptoms to worsen."  *Id.*  Defense counsel fairly commented on the evidence presented at trial during the closing argument.  Tr. at 1509-15.  Defense counsel specifically referred to the testimony of Plaintiff's adult stepchild, August Potje, about Plaintiff needing to lay plywood in an attic and having done some of the work himself, including climbing up and down a ladder with 40-pound sheets of plywood one to two months after the accident.  Tr. at 1509-10, 836-38.  Potje had testified that by the time he arrived at that particular job site, the work was 30 percent complete.  Tr. at 838.  This physical activity coincided with a single report of urinary incontinence in October 2017, and defense counsel noted that report as well when she referenced Plaintiff's work on the attic at about the same time.  Tr. at 976-77, 1509.  Defense counsel also referenced in closing the testimony of witnesses Derek Shenk and Sean Connelly, who testified as to Plaintiff's work on their home, specifically, the five-bathroom remodeling projects and HVAC installation in late 2017 through the summer of 2018, coinciding in timing with complaints that caused Dr. Fliman to order an MRI in April 2018, and Plaintiff's worsened complaints after a July 2018 MRI.  Tr. at 1018-30, 1087-93, 1364-65, 1369, 1379, 1511.

This aspect of the defense closing argument generated no error.  The Court overruled Plaintiff's objection during defense counsel's closing argument that "[n]one of this has been tied

up by any witness." Tr. at 1510. The Court responded before the jury that "[t]he jury will understand what the evidence was, and counsel may argue it." *Id.* That statement was entirely in line with the Court's instructions that lawyers' statements themselves are not evidence. Although Plaintiff attempts to spin this argument into a need for expert testimony to support the defense's closing argument in this regard, in actuality, all defense counsel did was connect the dots between evidence presented of Plaintiff's physical activities with coinciding symptoms and complaints in the medical records, well within the appropriate bounds of closing argument, which, again, does not rise to the level of reversible error unless it departs from the trial evidence. *See Willis*, 687 F.2d at 834. As far as determining whether a particular argument did or did not depart from the trial evidence, district courts enjoy considerable discretion in supervising counsel's arguments, and the Seventh Circuit will reverse a verdict only for abuse of that discretion. *Black v. Wrigley*, 997 F.3d 702, 710 (7th Cir. 2021) (internal citations omitted). "To warrant a new trial, statements made during closing argument must be plainly unwarranted and clearly injurious to constitute reversible error." *Id.* (internal citations and quotations omitted). "Attorneys have … leeway in closing arguments to suggest inferences based on the evidence, highlight weaknesses in the opponent's case, and emphasize strengths in their own case." *Id.* at 711. And again, improper comments during closing argument rarely rise to the level of reversible error in a civil trial in the Seventh Circuit. *Willis,* 687 F.2d at 834; *Soltys,* 520 F.3d at 745.

The comments during closing here did not improperly depart from the trial evidence and were not otherwise improper. Plaintiff cites to cases that rely on the Illinois Supreme Court's ruling in *Voykin v. Estate of DeBoer,* 192 Ill. 2d 49, 59 (2000), for the proposition that expert testimony is necessary to demonstrate why a prior injury is relevant to causation or damages. Federal law applies here, and "[i]n federal court, no expert testimony is needed when the symptoms

exhibited by the plaintiff are not beyond a layperson's grasp." *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004). But Illinois law under *Voykin* is no different, given that *Voykin* held that a trial court may, "in its discretion, determine[] that the natures of the prior and current injuries are such that a lay person can readily appraise the relationship, if any, between those injuries without expert assistance." 192 Ill. 2d at 59. That is what happened in this trial, and it was not error. If Plaintiff's symptoms worsened when he engaged in strenuous physical activity, such as his demolition and renovation of bathrooms and installation of HVAC system, a lay person could reasonably infer that the physical activity caused his symptoms to worsen.

The Court further finds that Plaintiff's motions *in limine* Nos. 23 and 24 were not violated by defense counsel's closing argument. Those motions sought to bar evidence of Plaintiff's prior injuries or conditions not connected to Plaintiff's present injuries, of prior or subsequent accidents not connected by expert testimony to the injuries Plaintiff alleges in the lawsuit, and to similar accidents that may show a likelihood of Plaintiff to have accidents or be accident-prone. 7/6/23 Order at 7. The Court granted these motions over objection, subject to later argument that Plaintiff opened the door to any of these issues. *Id.* As stated above, a lay person could readily appraise the relationship, if any, between Plaintiff's physical activities and the worsening of his symptoms. Defense counsel's argument did not amount to a violation of the motions *in limine*, which did not foreclose defense counsel from commenting fairly on the evidence within the substantial leeway given counsel on closing argument in the Seventh Circuit.

Finally, as the Court has noted with respect to Plaintiff's attacks on the defense closing argument, the jury was instructed that closing argument is not evidence. This sort of jury instruction mitigates any prejudicial effect of potentially improper remarks by counsel during closing argument. *Black*, 997 F.3d at 711. Plaintiff again makes no showing that the jury did not

36

or could not follow this instruction. *See Garcia*, 81 F.4th at 698. Reversal of a civil jury verdict for improper closing argument comments is rare in the Seventh Circuit, which requires "a high level of impropriety and prejudice … to merit a new trial." *Smith v. Hunt*, 707 F.3d 803, 812 (7th Cir. 2013). Plaintiff, in his rebuttal closing, had the last word, so to speak, and was able to respond and rebut the allegations in the defense's closing. The Seventh Circuit has considered a litigant's ability to reply in assessing the claimed prejudice of improper closing argument. *Id.*, citing *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 645-46 (7th Cir. 1995). Plaintiff's counsel argued to the jury in rebuttal that the trial contained "no testimony" that Plaintiff was carrying 40-pound pieces of plywood up and down the stairs, but counsel also admitted, "sure, he was out there." Tr. at 1525. The jury was free to assess the viability of that argument as well, having heard Potje's testimony, on redirect examination, that he was not sure just how many sheets of plywood that Plaintiff was able to get up the ladder (Tr. at 852), as opposed to Plaintiff's closing argument that there had been no such testimony. What's good for the goose is good for the gander, and the Court allowed both sides considerable leeway on close, in a manner that did not constitute reversible error, unfair prejudice, or any ground for a do-over of this civil trial.

### G. Defense's purported injection of a false issue in closing argument

Further searching for reversible error among defense counsel's statements during closing argument, Plaintiff asserts he was deprived of a fair trial when defense counsel "created a factual fallacy" as a result of references to Plaintiff's lack of a traumatic brain injury during closing argument. Pl. Mem. at 14. This argument fails as well. Once again, "[a]ttorneys have … leeway in closing arguments to suggest inferences based on the evidence, highlight weaknesses in the opponent's case, and emphasize strengths in their own case." *Black*, 997 F.3d at 711 (internal quotations omitted). Defense counsel did just that in closing argument, when she highlighted the

37

two injuries claimed from the accident and noted that despite not claiming cognitive injuries, Plaintiff put neuropsychologist Dr. Rothke on the stand to testify. Tr. at 1495-97. Defense counsel referenced Plaintiff's own testimony of self-proclaimed memory and word-finding problems and juxtaposed that with Dr. Rothke's findings that Plaintiff had no difficulties in his ability to understand questions or communicate his responses. Tr. at 1496-97. Plaintiff's contention that defense counsel used visual slides to buttress her argument is waived as he did not object to the presentation being shown to the jury and regardless, this argument otherwise fails for the same reasons discussed above concerning Plaintiff's other quarrels with the defense closing argument. Tr. at 1491-1520.

Plaintiff also can hardly claim unfair prejudice from the defense closing's references to Plaintiff not claiming cognitive injuries from traumatic brain injury when, in fact, Plaintiff had withdrawn his claims for cognitive impairment from traumatic brain injury and was not seeking damages for such injuries. As vague as Plaintiff's withdrawal of such claims was, the Court sees nothing in Plaintiff's Rule 59 motion to suggest that the foregoing portion of the defense close could possibly rise to the level of reversible error.[10] *See* Pl. Mem. at 14. As Plaintiff appropriately states, "[a] new trial is warranted only if allegedly improper closing remarks depart from the evidence presented at trial and result in substantial prejudice to the opposing party." Pl. Mem. at 14, quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 731 (7th Cir. 1999) (affirming denial of plaintiff's motion for new trial where district court did not abuse its discretion in overruling

---

[10] The Court agrees with Defendant that Plaintiff's representation of his withdrawal of this claim prior to trial was vague at best. In reference to Dr. Rothke's testimony, counsel for Plaintiff cites the following as his basis for the withdrawal: "So when counsel says 'traumatic brain injury,' I think even though Dr. Cristea had it in his differential, as I interpret these things, Dr. Rothke, who did his own neuropsych testing and relied upon his predecessor, he doesn't think it's traumatic brain injury. He just thinks it's a depression/anxiety related to what he's gone through, basically, as I understand it." *See* Pl. Mem. at 14; Def. Resp. at 26, citing/quoting Final Pretrial Conference Transcript at 37 (D.E. 232-13).

plaintiff's objections to defense counsel's closing argument remarks that were not so egregious as to compel a new trial). Nothing of that sort occurred here. Defense counsel was at the stage of trial where she was "given the opportunity to discuss more freely the weaknesses in [the] opponent's case and to highlight the strength of [her] own." *Jones*, 188 F.3d at 731. Even if defense counsel's argument were improper, and the Court does not see that it was, the argument did not result in "substantial prejudice" to Plaintiff, for the reasons discussed. Moreover, Plaintiff was afforded the opportunity to clarify on rebuttal and did so with respect to Dr. Rothke, arguing that "we didn't claim there was traumatic brain injury," brain damage or a cognitive disorder. Tr. at 1526. Nothing about Defendant's reference to Dr. Rothke in closing argument comes close to warranting a new trial under the applicable Seventh Circuit standards governing motions for new trial based on supposed improper remarks in closing argument.

Finally, the last ingredient in Plaintiff's potpourri of arguments for a new trial in his Rule 59 motion claims that the defense improperly enflamed the jury's passion against Plaintiff by portraying him as overreaching and pressing a meritless claim. Pl. Mem. at 15. The Court is not clear precisely what species of unfair prejudice Plaintiff is arguing here, other than perhaps his argument that because Plaintiff had – vaguely – withdrawn his traumatic brain injury claims, Defendant should not have been allowed to shoot them down in closing argument, in that the argument thus "inflamed" the jury unfairly against Plaintiff. Pl. Mem. at 15. This is the Court's most generous interpretation of Plaintiff's argument, and even if it is correct, the line tracing a path from Plaintiff's vague withdrawal of those claims, defense counsel's reference to them in closing argument, and any notion of improper closing argument and substantial prejudice therefrom is neither clear nor straight. Even if the Court could discern the path of that line, it does not lead to substantial prejudice that would warrant a new trial. The leeway afforded Defendant in closing

argument renders foggy at best any claims of prejudice from references to purportedly – and vaguely – withdrawn claims.

Overall, Plaintiff had substantial leeway to offer evidence and argument in support of his damages claims, and the jury spoke. After all, the "jury is entitled to weigh the evidence presented to it and to evaluate the credibility of the witnesses." *Kapelanski*, 390 F.3d at 531; *see also Stragapede v. City of Evanston, IL*, 865 F.3d 861, 866 (7th Cir. 2017) (noting that it is the "jury's job to weigh conflicting evidence, make credibility determinations, and evaluate the trial record based on its collective common sense."). Plaintiff sought damages in an amount of $14.3-$20.4 million for a low-impact, rear-end collision from which the evidence showed Plaintiff walked away after the accident, refused ambulance transportation to a hospital, drove to his business appointment, and later went on vacations and cruise ships, and later carried sheets of plywood up a ladder during a home remodeling project. The jury weighed this evidence against the Plaintiff's own testimony and that of his witnesses and expert witnesses as to the nature and permanency of his physical injuries, the emotional distress he experienced, and his past and future wage loss stemming from the collision. Importantly, the jury did not find his damages claims entirely meritless but instead awarded him some fraction of the much larger payday he sought. No part about the defense closing argument brought about that result through any injustice, miscarriage of justice, unfair characterization of the evidence, or other species of unfairness. Plaintiff's trial may not have been perfect, but it was fair, even if he now would prefer a better result. *See Lemons,* 985 F.2d at 357.

## CONCLUSION

This was a hotly contested case wherein both sides were afforded much leeway. The jury returned a verdict for the Plaintiff, but the amount of his damage award was much closer to what the defense had sought. The jury broke down its award into component amounts in a manner indicating that this jury took its responsibility seriously and carefully weighed the evidence as to each claim. The asserted errors in Plaintiff's motion were not errors and did not individually or cumulatively prejudice him unfairly or in any other way that would support his request for a new trial. Plaintiff received a fair trial, and the verdict will not be disturbed. Plaintiff's Rule 59(a) Motion for a New Trial (D.E. 232) is denied for all of the reasons stated above.

**SO ORDERED.**

ENTER:

GABRIEL A. FUENTES
United States Magistrate Judge

**DATED: March 21, 2024**